718 P.2d 1026

**BLUE RIDGE SEWER IMPROVEMENT DISTRICT, a municipal corporation of the State of Arizona, Plaintiff-Counterdefendant and Appellee,**

v.

**LOWRY AND ASSOCIATES, INC., a California corporation, Defendant-Counterclaimant and Appellant.**

No. 1 CA–CIV 8348.

Court of Appeals of Arizona,
Division 1, Department B.

March 27, 1986.

374

John G. Gliege, Flagstaff, for Blue Ridge Sewer Imp. Dist.

Eaton, Lazarus, Dodge, & Lowry by James B. Ball, and Carlos R. Castro, Phoenix, for Lowry and Associates, Inc.

## OPINION

MEYERSON, Judge.

■ This case involves the doctrine of unjust enrichment. As explained more fully herein, we hold that one who provides services under a contract with a political subdivision may not recover for the value of those services under *quantum meruit* if the contract was entered into in violation of a state law requiring approval of a majority of property owners in the area affected.

### I. FACTS

Blue Ridge Sewer Improvement District (Blue Ridge) is a political subdivision of the State of Arizona formed pursuant to A.R.S. §§ 11–701 to –771.45.[1] The District is divided into a number of assessment areas. The dispute in this case concerns Assessment Area 5B.

Blue Ridge proposed to construct sewage facilities within Area 5B. The process for doing so required that Blue Ridge hire an engineer before proceeding. A.R.S. § 11–712. In March, 1980, Blue Ridge entered into a contract with Lowry and Associates (Lowry) for "general engineering services" in connection with the formation of the

---

1. In 1985, the legislature renumbered the improvement district statutes and codified them in Title 48. Laws 1985, ch. 190, § 7. A.R.S. §§ 48–901 to –1017. References to the improvement district statutes will be made to the statutes as numbered during the pendency of this action.

assessment area and design of the sewage facilities. The so-called assessment area formation services included the (1) preparation of a legal description of the assessment area boundaries, (2) compilation of property ownership records, and (3) verification of property ownership during the petition signing process. Before incurring any expense for which the district may become liable, owners of a majority of the property fronting the proposed improvement must sign petitions authorizing the work. A.R.S. § 11–714. To comply with the statute, petitions bearing the property owners' signatures were submitted to Blue Ridge prior to the execution of the contract with Lowry.

Lowry proceeded with its design services called for under the contract and ultimately billed Blue Ridge $119,000 for such services. It was not until several years later, however, that the parties realized that an insufficient number of property owners had signed the petitions.

Blue Ridge brought a declaratory judgment action to determine whether it was liable to Lowry for the engineering design services. Lowry counterclaimed for breach of contract, and asked that it be awarded $119,000 under the doctrine of *quantum meruit*. Blue Ridge moved to dismiss the counterclaim; the trial court treated the motion as a motion for summary judgment.

The trial court found for Blue Ridge holding that the petition to form the assessment district had an insufficient number of signatures to satisfy statutory requirements. The court found that Lowry was partially at fault and that it had failed to confer a benefit on Blue Ridge. Finally, the court declared that the strictness of the applicable statute negated the application of *quantum meruit*. For the reasons stated herein, we affirm the judgment of the trial court.

## II. BACKGROUND

■ *Quantum meruit* is a restitutionary remedy which is based upon the doctrine of unjust enrichment. *See generally*, D. Dobbs, *Remedies* §§ 4.1–4.2 (1973)

(Dobbs). It is one theory, among several, falling within the realm of implied-in-law and quasi-contracts. Dobbs at § 4.2. "Contracts implied-in-law or quasi-contracts ... are inferred by the law as a matter of reason and justice from the acts and conduct of the parties and circumstances surrounding the transactions and are imposed for the purpose of bringing about justice without reference to the intention of the parties." *John A. Artukovich & Sons, Inc. v. Reliance Truck Co.*, 126 Ariz. 246, 248, 614 P.2d 327, 329 (1980) (citation omitted). "Quantum meruit is a principal [sic] of equity based on the theory that if one performs work for another and such work is accepted by the other, nonpayment for such work would result in an unjust enrichment to the party benefited by the work." *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex.Civ.App.1977); *City of Sierra Vista v. Cochise Enterprises, Inc.*, 144 Ariz. 375, 381, 697 P.2d 1125, 1131 (App. 1984). Recovery under *quantum meruit* may occur where the services are performed under an unenforceable contract or where services are rendered in the absence of a contract. Dobbs at 237.

Most jurisdictions refuse to allow a *quantum meruit* action against political bodies where the contract is unenforceable under state law. *Scofield Eng. Co. v. City of Danville*, 126 F.2d 942 (4th Cir.1942); *Galion Iron Works & Mfg. Co. v. City of Georgetown*, 322 Ill.App. 498, 54 N.E.2d 601 (1944); *see generally Annot.*, 154 A.L.R. 356 (1945); McQuillin, *Municipal Corporations* §§ 29.26, 29.112 (1981). Arizona, however, is among the minority of jurisdictions which have not imposed a blanket prohibition on this use of the doctrine in connection with invalid municipal contracts.

In *Greenlee County v. Webster*, 30 Ariz. 245, 246 P. 543 (1926), a contractor did excess work for the county beyond that called for in the contract. Arizona statutes limited the power of the county to pay for only that work described in the contract. The court nevertheless allowed the plaintiff to recover under *quantum meruit*, noting

the county's "obligation to do justice by compensating the plaintiffs." *Id.* at 252, 246 P. at 545. In *Yuma County v. Hanneman,* 42 Ariz. 561, 28 P.2d 622 (1934), the plaintiff allegedly sold goods to the county in violation of the competitive bidding statutes. Following its holding in *Greenlee County v. Webster,* the court permitted the plaintiff to recover despite the possible illegality of the contract. *See, e.g., Tolleson Union High School Dist. v. Kincaid,* 53 Ariz. 60, 85 P.2d 708 (1938); *Town of Holbrook v. Girand,* 52 Ariz. 291, 80 P.2d 695 (1938).

## III. APPLICATION OF QUANTUM MERUIT IN THIS CASE

 Despite the general availability of the doctrine of *quantum meruit* in actions of this kind in Arizona, we conclude that in the present case it should not be allowed. Central to the doctrine is the notion of unjust enrichment. *Murdock-Bryant Const., Inc. v. Pearson,* 146 Ariz. 48, 54, 703 P.2d 1197, 1203 (1985). In order for *quantum meruit* to be applicable the enrichment to the opposing party must be unjust. Generally, one who performs work which he was not asked to do cannot reap the benefits of *quantum meruit.* For in such a case, there is nothing unjust about the enrichment. Thus, if the plaintiff volunteers his services or if the plaintiff performs a service against the wishes of the defendant, the plaintiff cannot recover under *quantum meruit. See Eastern Renovating Corp. v. Roman Catholic Bishop,* 554 F.2d 4 (1st Cir.1977) (plaintiff denied *quantum meruit* where contracting work was performed against the wishes of church officials); *Plastics & Equip. Sales, Co. v. DeSoto, Inc.,* 91 Ill.App.3d 1011, 47 Ill.Dec. 487, 415 N.E.2d 492 (1980) (*quantum meruit* inapplicable where · plaintiff claimed broker's fee for services gratuitously conferred); *see generally* Dobbs at § 4.9.

In this case, the contract between the parties failed because an insufficient number of property owners signed petitions authorizing the planned sewer improvements.[2] Such improvements cannot be carried out unless certain statutory prerequisites are met. One requirement pertains to the approval by owners of a majority of property fronting the proposed improvement.

> A. Before incurring any expenses for which the district may become liable the board of directors shall require that there be filed with the clerk a petition signed by property owners as provided by this section.
>
> • • • • •
>
> C. The petition may be accepted as sufficient by the board of directors if it or the several parts thereof have attached thereto the affidavit of a property owner whose property is subject to assessment for the improvement, stating on his oath that he has examined the petition and *that the signatures thereto are the genuine signatures of the owners of a majority of the frontage property, fronting on the proposed improvement . . . .*

A.R.S. § 11–714 (emphasis added). It is undisputed that the petitions failed to contain the signatures of the owners of a majority of the property fronting on the improvement. Because Lowry bestowed services upon property owners who, pursuant to statutory requirements, implicitly chose not to receive such services, any benefit or enrichment given by Lowry cannot be considered unjust. Furthermore, as between Lowry and the landowners, Lowry assumed the contractual duty to determine whether the owners of a majority of the property approved the proposed improvement.

 The court recognizes that this contract was not formed with the property

---

**2.** The record fails to disclose whether Lowry's plans were subsequently used by Blue Ridge. If an improvement project is approved in accordance with A.R.S. § 11–714 and if Lowry's plans are utilized, nothing in this opinion would preclude Lowry from filing an action in *quantum meruit.* If the property owners elect to build an improvement and choose to retain any benefit conferred by Lowry, restitution may be available. Dobbs at 302–303.

owners, but rather with Blue Ridge. The property owners, however, are those individuals who must approve the project and who must pay. A.R.S. § 11–726. "The rule in such circumstances is that, however valuable the services, the person[s] in whose behalf they are rendered cannot be required to pay for them where they are rendered against [their] will and without [their] consent." *Saltz Bros., Inc. v. Saltz,* 122 F.2d 79, 81 (D.C.Cir.1941).

In a recent decision, the Arizona Court of Appeals, Division Two, found *quantum meruit* unavailable to a party who had contracted with a municipal corporation. *Maucher v. City of Eloy,* 145 Ariz. 335, 701 P.2d 593 (App.1985). In *Maucher,* the city violated a conflict of interest statute, A.R.S. § 38–503. The court not only found the contract formed in violation of the statute unenforceable, but it also refused to award recovery under *quantum meruit.* The court stated:

> Once it is decided that, on the facts of the particular case and in the light of the particular statute, the statutory policy would be undermined by even a restitutionary recovery, it is clear that the policy against unjust enrichment must bow to the policy established by the legislature.

*Id.* at 338, 701 P.2d at 596 (quoting Dobbs at 989). Here, Arizona law provides a mechanism to allow property owners to voice their opinion concerning a proposed improvement. To apply the doctrine of *quantum meruit* in this case would be to saddle the property owners with an expense which they chose not to incur. Lowry's recovery would not only undermine A.R.S. § 11–714, it would silence the very voice of those who would pay for Lowry's mistake. We refuse to apply the doctrine of *quantum meruit* upon the facts in this case.

Judgment affirmed.

CONTRERAS, P.J., and FROEB, C.J., concur.